**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ANTHONY JAMES MORGAN,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Civil Action No. 18 – 332
⠀⠀⠀⠀⠀⠀⠀⠀⠀Petitioner,⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Magistrate Judge Lisa Pupo Lenihan
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
MICHEAL OVERMYER and THE⠀⠀)
ATTORNEY GENERAL OF THE⠀⠀⠀)
STATE OF PENNSYLVANIA,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀Respondents.⠀)

**MEMORANDUM OPINION**[1]

Pending before the Court is an Amended Petition for Writ of Habeas Corpus ("Amended Petition") and a Supplement thereto ("Supplement") filed by Petitioner Anthony James Morgan ("Petitioner") pursuant to 28 U.S.C. § 2254.  (ECF Nos. 3, 6.)  Petitioner challenges his judgment of sentence imposed after he was convicted by a jury of first-degree murder.  For the following reasons, the Amended Petition and Supplement thereto will be denied, and a certificate of appealability will also be denied.

A.⠀⠀⠀**Factual Background**

In its opinion on direct appeal, the Superior Court summarized the factual and investigative history of the case as follows.

⠀⠀⠀. . . . Deon Thomas, the victim, was a drug dealer.  On the evening of September 1, 2004, Thomas' girlfriend, Crystal McHirella, looking through the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.  (ECF Nos. 8, 16.)

window of Thomas' home, observed Thomas lying in a pool of blood in a hallway near the front door.  The front door was locked.  She reported her observations to Officer Matthew Abel of the Mount Oliver Police Department, who responded, entered the apartment, confirmed that Thomas was dead, and secured the scene.

McHirella told police that Thomas was a drug-dealer.  She testified that she did not frequently observe Thomas' drug transactions, but identified to the police approximately a half-dozen individuals who were either clients of Thomas whom she had seen buying drugs from him or people with whom Thomas had had personal difficulties.  Among the individuals McHirella identified to investigators was Morgan, whom she had witnessed buying drugs from Thomas on several occasions, including in Thomas' home.  She further reported that Thomas sometimes flashed large sums of money when making change for buyers.

In Thomas' living room, Officer Abel observed that the living room was in disarray.  He saw blood spatters around the room and crack cocaine strewn across the floor.  He also discovered a bloody knife in the dining room area.  Officer Abel summoned the Allegheny County Homicide Unit to the scene.

Detective Robert Opferman of the Allegheny County Police Department responded with a mobile crime unit early on September 2, 2004.  He found blood spatters throughout the living room, as well as displaced and damaged furniture.  In the dining room, Detective Opferman observed a knife, which was half-opened and wrapped in electrical tape to hold it in an open position.  He also found blood stains and blood sprays in the bathroom.  Detective Opferman found other physical evidence near Thomas' body, including blood on the front door and on the door's deadbolt.

Approximately one month after the killing, Detective Opferman questioned Morgan.  Morgan acknowledged knowing and occasionally obtaining drugs from Thomas, but denied involvement in Thomas' death.  Morgan also indicated that, when he had visited Thomas' home, he had never proceeded past the living room.

Forensic Pathologist Todd Luckasevic, D.O., working from the autopsy report, testified that Thomas had sustained blunt force trauma to his face, neck, extremities, and back.  However, Thomas' cause of death was determined to be any one or more of nine stab wounds to his neck and trunk, five of which Dr. Luckasevic opined independently would have been fatal.  Dr. Luckasevic also testified that Thomas had sustained no wounds to either of his hands, and that one stab wound to his neck had a trajectory from back to front, up to down, and left to right, and was unlike the others, which had been inflicted front to back, from down to up.

2

The case went cold after 2004.  In 2010, however, investigators reopened the case and swore out a warrant to obtain a DNA sample from Morgan to be measured against certain evidence from the crime scene.  When detectives served the warrant on Morgan, at first he remained calm and cooperative.  He also offered for the first time an explanation as to why his DNA might have been found in Thomas' bathroom – to-wit, that he had injected heroin in Thomas' bathroom.  However, when police informed Morgan that his DNA also might be on the murder weapon or under Thomas' fingernails, Morgan's face flushed and he began to tremble.  They then collected the DNA sample and left.

Thomas Meyers of the Allegheny County Medical Examiner's Office, an FBI-certified DNA auditor with a masters degree in forensic chemistry, testified as an expert that the sample matched evidence obtained from the murder scene.  Specifically, he found that Morgan's DNA sample matched a sample recovered from Thomas' sink.  He further opined that Morgan was a possible contributor to a mixed DNA sample found on the murder weapon.

At trial, Morgan presented a theory of self-defense.  Morgan testified that he had purchased drugs from Thomas – typically in $20-30 increments – approximately weekly for over a year before Thomas' murder.  Morgan further testified that he had no conflicts with Thomas before the killing.  Morgan claimed that when he came to Thomas' home the day of the killing, Thomas attacked him without warning.  Morgan testified that he knew of an occasion when Thomas had assaulted a client who owed Thomas money.  He testified that, upon entry, Thomas attempted to stab him and that the men wrestled in the living room.  Morgan contended that Thomas pinned him against a footstool, but that Morgan disarmed Thomas and stabbed him to death.  Morgan also admitted that he lied to the police when he denied involvement in the killing when he was questioned a month after the killing, and further admitted throwing away the clothing that he was wearing when he killed Thomas.  He acknowledged that he went into hiding and did not see his three children and their mother for months when he detected that police were looking for him.  Police did not find and arrest Morgan until August 2011.

(Resp't Exh. 13, ECF No. 14-1, pp.123-26.)

**B.    Procedural Background**

Petitioner was charged by criminal information with one count of criminal homicide filed

in the Allegheny County Court of Common Pleas, Criminal Division at CP-02-CR-10913-2011.

(Resp't Exh. 1, ECF No. 14-1, pp.3-14.)  He proceeded to a jury trial before the Honorable

Donald E. Machen from October 29, 2012 to November 2, 2012.  At the conclusion of trial, the

jury convicted Petitioner of first-degree murder.  Petitioner declined a presentence investigation, and so he was sentenced to a mandatory term of life imprisonment without the possibility of parole immediately following the verdict.  (Resp't Exh. 4, ECF No. 14-1, pp.30-31.)  His post-sentence motions were denied by order dated March 11, 2013.  (Resp't Exh. 7, ECF No. 14-1, p.44.)  Petitioner's judgment of sentence was affirmed by the Pennsylvania Superior Court on May 23, 2014.  (Resp't Exh. 13, ECF No. 14-1, pp.122-43.)  The Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of Appeal on November 25, 2014.  (Resp't Exh. 17, ECF No. 14-1, p.167.)  Petitioner did not file a petition for writ of certiorari with the United States Supreme Court.

A *pro se* petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA") was filed by Petitioner on June 19, 2015.  (Resp't Exh. 24, ECF No. 14-1, pp.168-78.)  The PCRA court appointed counsel for Petitioner, and on September 28, 2015, counsel filed a Motion for Leave to Withdraw and a No-Merit letter pursuant to Commonwealth v. Turner, 544 A.2d 927 (1988) and Commonwealth v. Finley, 550 A.2d 213 (1988).  (Resp't Exh. 19, ECF No. 14-2, pp.3-19.)  The PCRA court granted counsel leave to withdraw and issued its Notice of Intent to dismiss the PCRA petition without a hearing on November 16, 2015.  (Resp't Exh. 20, ECF No. 14-2, p.20.)  Petitioner filed *pro se* objections to the PCRA court's Notice of Intent.  (Resp't Exh. 21, ECF No. 14-2, pp.21-36.)  The PCRA court dismissed the PCRA petition by order dated December 7, 2015.  (Resp't Exh. 22, ECF No. 14-2, p.37.)

Petitioner appealed the dismissal of his PCRA petition.  (Resp't Exh. 23, ECF No. 14-2, pp.38-41.)  The Superior Court affirmed the denial of PCRA relief on September 7, 2017.  (Resp't Exh. 28, ECF No. 14-2, pp.156-69.)  The Superior Court dismissed Petitioner's application for reargument on timeliness grounds on October 20, 2017.  (Resp't Exh. 30, ECF

No. 14-2, p.172.)  Petitioner did not file a petition for allowance of appeal with the Pennsylvania

Supreme Court.

Petitioner initiated the instant habeas proceedings in this Court on March 8, 2018.[2]  (ECF

No. 1.)  Petitioner was directed to file an amended petition, which was filed on May 18, 2018.

(ECF Nos. 2, 3.)  Petitioner filed a Supplement to his Amended Petition on June 21, 2018.  (ECF

No. 6.)  Respondents filed their Answer to the Petitions on August 8, 2018.  (ECF No. 14.)

Petitioner filed a Traverse on September 12, 2018.  (ECF No. 19.)

### C.  **Petitioner's Claims**

Although Petitioner's claims are not set forth in an organized numbered fashion, he

appears to raise seventeen individual claims throughout his Amended Petition and Supplement

thereto.  Those claims appear to be as follows:  (1) trial court error for failing to rule on his *pro

se* omnibus pretrial motion; (2) a layered ineffective assistance of counsel claim for (i) failing to

thoroughly investigate the case, (ii) the investigator failing to investigate the crime scene,

interview witnesses, investigate evidence and recreate the crime scene, (iii) failing to investigate

his clothing that he left at the crime scene, (iv) failing to present character witnesses and rebut

Commonwealth evidence, (v) advising him to take the stand and testify in his own defense, (vi)

advising him to waive a presentence investigation report, and (vii) failing to assert a claim and/or

withdraw due to a conflict of interest; (3) ineffective assistance of trial counsel for allowing his

private investigator to leak private information to the Commonwealth; (4) ineffective assistance

of trial counsel for withdrawing a motion to suppress; (5) trial court error by instructing the jury

on first-degree murder; (6) exculpatory evidence not admitted at trial supported the defense's

---

[2] This is the filing date pursuant to the prison mailbox rule.  *See* Houston v. Lack, 487 U.S. 266 (1988).

theory of self-defense; (7) prosecutorial misconduct in connection with the introduction of an intake photo that indicated petitioner weighed 207 pounds; (8) a layered claim of ineffective assistance of counsel for failing to hire an expert witness to recreate the crime scene, examine blood spatter evidence from his shirt that he left at the scene and testify that the evidence supported his theory that the victim was the aggressor; (9) ineffective assistance of trial counsel for failing to properly prepare for trial and put forth a reasonable defense; (10) ineffective assistance of trial counsel for failing to move to dismiss the jury and proceed with a bench trial; (11) ineffective assistance of trial counsel for failing to cross-examine the victim's girlfriend about conflicting statements made to the police; (12) ineffective assistance of trial counsel for failing to object to the prosecutor's improper comments during closing arguments; (13) trial court error in connection with the reading of jury instructions; (14) a violation of the Ex Post Facto Clause; (15) PCRA court error; (16) ineffective assistance of trial counsel for failing to cross-examine the victim's girlfriend about the victim's violent behavior towards her; and (17) a violation of Brady v. Maryland, 373 U.S. 83 (1963). The Court has reordered Petitioner's claims for ease of disposition.

**D. Procedurally Defaulted Claims**

**1. Exhaustion and Procedural Default**

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. This "exhaustion" requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002) (quoting Coleman v. Thompson, 501 U.S. 722, 731 (1991)). See also O'Sullivan v. Boerckel, 526 U.S.

838, 844 (1999).  A petitioner shall not be deemed to have exhausted state remedies if he has the right to raise his claims by any available state procedure.  28 U.S.C. § 2254(c).

In order to exhaust a claim, a petitioner must "fairly present" it to each level of the state courts.  Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (citing 28 U.S.C. § 2254(b)); O'Sullivan, 526 U.S. at 848.  In Pennsylvania, this requirement means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Common Pleas Court and then the Superior Court either on direct or PCRA appeal.  *See* Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).  The petitioner must demonstrate that he raised the claim in the proper state forums through the proper vehicle, not just that he raised a federal constitutional claim before a state court at some point.  O'Sullivan, 526 U.S. at 845 (a petitioner must have presented a claim through the "established" means of presenting a claim in state court at the time); Ellison v. Rogers, 484 F.3d 658, 660-62 (3d Cir. 2007) (the petitioner's claims of ineffective assistance were not exhausted properly even though he had raised those claims on direct review, because state law required that ineffective assistance claims be raised in state post-conviction review, and the petitioner had not sought such review).  Additionally, in order to "fairly present" a claim in the state courts to satisfy the exhaustion requirement, "[b]oth the legal theory and the facts on which a federal claim rests must have been presented to the state courts."  Gibson v. Scheidemantel, 805 F.2d 135, 138 (3d Cir. 1986) (citing Picard v. Connor, 404 U.S. 270, 277 (1971)).  "This requires that the claim brought in federal court be the substantial equivalent of that presented to the state court."  Id.

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective

process.'" McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999) (quoting 28 U.S.C. §

2254(b)).  In such cases, however, applicants are considered to have procedurally defaulted their

claims, Rolan v. Coleman, 680 F.3d 317 (3d Cir. 2012) ("Procedural default occurs when a claim

has not been fairly presented to the state courts . . . and there is no additional state remedies

available to pursue . . . or, when an issue is properly asserted in the state system but not

addressed on the merits because of an independent and adequate state procedural rule . . . .), and

federal courts may not consider procedurally defaulted claims unless "the prisoner can

demonstrate cause for the default and actual prejudice as a result of the alleged violation of

federal law, or demonstrate that failure to consider the claim[] will result in a fundamental

miscarriage of justice." Coleman, 501 U.S. at 750.  To show cause, a petitioner must

demonstrate "some objective factor external to the defense" that prevented compliance with the

state's procedural requirements.  Id. at 753 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).

To show a fundamental miscarriage of justice, a petitioner must demonstrate that he is actually

innocent of the crime, McCleskey v. Zant, 499 U.S. 467, 494 (1991), by presenting new evidence

of innocence.  Schlup v. Delo, 513 U.S. 298, 316 (1995).

   Finally, the "adequate and independent state ground doctrine applies on federal

habeas[,]" Harris v. Reed, 489 U.S. 255, 262 (1989) (citing Wainwright v. Sykes, 433 U.S. 72,

81, 87 (1977)), insofar as federal review is barred if claims are "defaulted . . . in state court

pursuant to an independent and adequate state procedural rule."  Coleman, 501 U.S. at 750.  In

other words, "[t]he procedural default doctrine prohibits federal courts from reviewing a state

court decision involving a federal question if the state court decision is based on a rule of state

law that is independent of the federal question and adequate to support the judgment."  Nara v.

Frank, 488 F.3d 187, 199 (3d Cir. 2007).  The requirements of "independence" and "adequacy"

are distinct.  <u>Johnson v. Pinchak</u>, 392 F.3d 551, 557-59 (3d Cir. 2004).  State procedural grounds

are not independent, and will not bar federal habeas relief, if the state law ground rested

primarily on federal law or is so "interwoven with federal law" that it cannot be said to be

independent of the merits of petitioner's federal claims.  <u>Coleman</u>, 501 U.S. at 739-40.  A state

rule is "adequate" if it is "firmly established and regularly followed."  <u>Johnson v. Lee</u>, 136 S. Ct.

1802, 1804 (2016) (citation omitted).  These requirements ensure that "federal review is not

barred unless a habeas petitioner had fair notice of the need to follow the state procedural rule,"

and that "review is foreclosed by what may honestly be called 'rules' . . . of general

applicability[,] rather than by whim or prejudice against a claim or claimant."  <u>Bronshtein v.

Horn</u>, 404 F.3d 700, 707, 708 (3d Cir. 2005).

### 2.  <u>Claims defaulted in state court (Claims 1 through 8)</u>

While Petitioner did present each of claims one through eight to the state courts at some

point in time, claims one through seven are procedurally defaulted pursuant to the independent

and adequate state ground doctrine and claim eight is procedurally defaulted because it was not

presented to the Superior Court on appeal.

In claim one, Petitioner argues that the trial court erred by failing to rule on his *pro se*

omnibus pretrial motion dated August 28, 2012, in which he informed the court that he fired his

public defender and moved the court to appoint him new counsel and grant him funds to pay for

a private investigator.[3]  He admits that his request for a new lawyer was denied by the court at a

status hearing, at which time he was told that he could not fire his public defender and that he

needed to cooperate with him, but Petitioner argues that he was denied due process because his

---

[3] It is unclear, but Petitioner appears to withdraw this claim in his Traverse.  *See* ECF No. 19, p.8
(stating that "if defaulted petitioner deletes this claim").

motion was never actually ruled on by the court. *See* ECF No. 3-1, pp.1-2. Petitioner, however, did not raise this claim on direct appeal, in his PCRA petition or in his objections to the PCRA court's notice of intent to dismiss his PCRA petition. Instead, he raised it for the first time in his concise statement of errors complained of on appeal following the denial of PCRA relief. *See* ECF No. 6-1, p.13. The Superior Court therefore found that the claim was waived pursuant to Pennsylvania Rule of Appellate Procedure 302(a) ("Rule 302(a)")[4] because Petitioner did not properly preserve it by first raising it in the lower court. *See* ECF No. 14-2, pp.162-63.

The Superior Court's reliance on Rule 302(a) precludes review of this claim because Rule 302(a) is an independent and adequate state procedural rule; it is both independent of federal law and firmly established and regularly followed by Pennsylvania courts. *See*, *e.g.*, Thomas v. Secretary, Pennsylvania Dept. of Corrections, 495 F. App'x 200, 205-06 (3d Cir. Sept. 5, 2012) (noting regularity with which Rule 302(a) is applied by Pennsylvania courts to "decline to consider on appeal an argument that was not explicitly raised in the PCRA petition"); Crocker v. Klem, 450 F. App'x 136, 138 (3d Cir. Nov. 4, 2011); O'Halloran v. Ryan, 704 F.Supp. 70, 73-74 (E.D. Pa. 1989), *aff'd*, 887 F.2d 262 (3d Cir. 1989). The claim is thus procedurally defaulted, and this Court may not review it unless Petitioner establishes cause and prejudice or a fundamental miscarriage of justice to excuse the default. Petitioner, however, has not argued, much less demonstrated, the application of either. Accordingly, claim one is procedurally defaulted and not subject to federal habeas review.

---

[4] Rule 302(a) states, "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa. R.A.P. 302(a).

In claim two, Petitioner presents what he describes as a "layered" claim of ineffective assistance of counsel.  He claims that his counsel were ineffective for (i) failing to thoroughly investigate the case, (ii) the investigator failing to investigate the crime scene, interview witnesses, investigate evidence and recreate the crime scene, (iii) failing to investigate his clothing that he left at the crime scene, (iv) failing to present character witnesses[5] and rebut Commonwealth evidence, (v) advising him to take the stand and testify in his own defense,[6] (vi) advising him to waive a presentence investigation report,[7] and (vii) failing to assert a claim and/or withdraw due to a conflict of interest.  *See* ECF No. 3-1, p.1; ECF No. 6-1, p.29.  Like the previous claim, Petitioner raised this claim for the first time in his concise statement of errors complained of on appeal following the denial of PCRA relief.  *See* ECF No. 6-1, pp.13-14.  For this reason, the Superior Court found that the claim was waived pursuant to Rule 302(a).  *See* ECF No. 14-2, pp.162-63.  And, for the same reasons discussed in connection with claim one, this claim is also procedurally defaulted and not subject to federal habeas review.

In claim three, Petitioner argues that his trial counsel was ineffective because his private investigator leaked private information to the Commonwealth about the clothes he was wearing on the day of the crime, specifically, that Petitioner threw them away.  *See* ECF No. 3-1, p.3.  In his Supplement, Petitioner appears to raise this claim again, except under a theory of a violation

---

[5] Petitioner appears to withdraw this part of this claim in his Traverse.  *See* ECF No. 19, p.7 (stating that "if defaulted [petitioner] would delete this claim").

[6] Petitioner appears to withdraw this part of this claim in his Traverse.  *See* ECF No. 19, p.7 (stating that "if defaulted [petitioner] would delete this claim").

[7] Petitioner appears to withdraw this part of this claim in his Traverse.  *See* ECF No. 19, p.7 (stating that "petitioner wishes to delete this claim")

of the attorney client privilege.  *See* ECF No. 6, p.4.  Petitioner, however, did not present either

version of this claim, at least in its current form, in the lower court,[8] and he raised it for the first

time in his concise statement of errors complained of on appeal following the denial of PCRA

relief.  *See* ECF No. 6-1, p.15.  The Superior Court thus found that the claim was waived

pursuant to Rule 302(a).  *See* ECF No. 14-2, pp.162-63.  Accordingly, for the same reasons

discussed in connection with claim one, this claim is also procedurally defaulted and not subject

to federal habeas review.

 In claim four, Petitioner argues that his trial counsel was ineffective for withdrawing a

motion to suppress in which he argued that Petitioner's statements were obtained in violation of

Miranda.[9]  *See* ECF No. 3-1, pp. 3, 12.  Like the previous claims, Petitioner did not present this

claim in his PCRA petition or in his response to the PCRA court's notice of intent to dismiss his

petition, and he raised it for the first time in his concise statement of errors complained of on

appeal following the denial of PCRA relief.  *See* ECF No. 6-1, p.15.  The Superior Court thus

found that the claim was waived pursuant to Rule 302(a).  *See* ECF No. 14-2, pp.162-63.

Accordingly, for the same reasons discussed in connection with claim one, this claim is also

procedurally defaulted and not subject to federal habeas review.

 In claim five, Petitioner argues that the trial court erred by instructing the jury on first-

degree murder after the Commonwealth failed to offer any evidence of intent to support the

---

[8] He did, however, raise a related claim in his PCRA petition; specifically, that trial counsel was
ineffective for failing to object when the prosecutor asked what he did with his clothes that he
was wearing on the day of the crime.  Petitioner deemed the prosecutor's actions as
"prosecutorial misconduct" and stated that his counsel should have objected.  *See* ECF No. 14-2,
p.13.

[9] Miranda v. Arizona, 384 U.S. 436 (1966).

instruction beyond a theory, which he maintains was insufficient to support granting an instruction.  *See* ECF No. 3-1, p.5.  Like the previous claims, the first time Petitioner presented this claim to the state court was in his concise statement of errors complained of on appeal following the denial of PCRA relief.  *See* ECF No. 6-1, p.17.  The Superior Court thus found that the claim was waived pursuant to Rule 302(a).  *See* ECF No. 14-2, pp.162-63.  Accordingly, for the same reasons discussed in connection with claim one, this claim is also procedurally defaulted and not subject to federal habeas review.

In claim six, Petitioner argues that he is entitled to a new trial because certain exculpatory evidence not admitted at trial, such as fingernail marks and bruises and abrasions on the victim's shins, support his theory that the victim was the aggressor and that he stabbed him in self-defense.  *See* ECF No. 3-1, pp.5, 6.  This claim was raised for the first time in its current form in Petitioner's concise statement of matters complained of on appeal following the denial of PCRA relief.  *See* ECF No. 6-1, p.17.  The Superior Court thus found that the claim was waived pursuant to Rule 302(a).  *See* ECF No. 14-2, pp.162-63.  Accordingly, for the same reasons discussed in connection with claim one, this claim is also procedurally defaulted and not subject to federal habeas review.

In claim seven, Petitioner argues misconduct on the part of the prosecutor for "fabricating evidence" in connection with his weight in order to argue to the jury that he was big and muscular at the time of the crime.  Specifically, he maintains and he testified at trial that he weighed between 170 and 175 pounds at the time of the crime, but the prosecutor made him read the height and weight information from an old intake photo taken in May 2004 that listed Petitioner's height as 5'10" and weight as 207 pounds.  Petitioner claims the prosecutor was in possession of information of an intake photo taken in October 2004, the month after the crime,

which would have demonstrated that he was testifying truthfully when he stated that he weighed between 170 and 175 pounds at the time of the crime.  *See* ECF No. 3-1, pp.5, 7.  He also claims that a warrant issued in July 2004 listed his height as 5'9" and his weight as 175 pounds, which Petitioner argues also demonstrates that he was testifying truthfully.  *See* ECF No. 6-1, p.8.  The first time that Petitioner raised this claim in its current form, however, was in his concise statement of errors complained of on appeal following the denial of PCRA relief.[10]  *See* ECF No. 6-1, p.17.  The Superior Court thus deemed the claim waived pursuant to Rule 302(a).  *See* ECF No. 14-2, pp.162-63.  Accordingly, for the same reasons discussed in connection with claim one, this claim is also procedurally defaulted and not subject to federal habeas review.

In claim eight, Petitioner raises what he again describes as a "layered" claim of ineffective assistance of counsel for failing to hire an expert witness to recreate the crime scene, examine blood spatter evidence from his shirt that he left at the scene and testify that the evidence supported his theory that the victim was the aggressor.  *See* ECF No. 3, p.5.  Petitioner raised a version of this claim in his PCRA petition.  Specifically, he stated that he left a tan shirt at the scene and argued that if examined the blood on it would prove that the victim was bleeding while on top of him.  *See* ECF No. 14-2, p.15.  Petitioner, however, did not raise this claim in its current form until he filed his response to the PCRA court's notice of intent to dismiss his petition.  *See* ECF No. 14-2, p.25.  On appeal from the denial of PCRA relief, Petitioner abandoned this claim and did not include it in his concise statement of errors complained of on appeal.  *See* ECF No. 6-1, pp.12-18.  He therefore did not properly exhaust it and it is now

---

[10] He did, however, premise this claim on a different theory in his PCRA petition; specifically, he argued that his trial counsel was ineffective for failing to impart evidence to the jury that he was "strung out" at the time of the crime weighing only 170 pounds.  *See* ECF No. 14-2, p.16.

procedurally defaulted because Petitioner would be time-barred from going back to state court and raising it now.  However, like the previous claims, Petitioner has not argued, much less demonstrated, cause and prejudice or a miscarriage of justice to excuse the default.  Accordingly, it too is not subject to federal habeas review.

3.  **Claims never raised in state court (Claims 9 through 14)**

In his Amended Petition and Supplement thereto, Petitioner raises numerous claims that were never presented in the state courts.  In claim nine, he argues that his trial counsel was ineffective for failing to properly prepare for trial and put forth a reasonable defense. Specifically, he states that trial counsel presented only one exhibit at trial, a giant poster board of genetic markers, but he argues that this evidence was irrelevant because his theory was self-defense and he did not deny killing the victim.  *See* ECF No. 3-1, p.11.  He also claims that trial counsel should have objected to the Commonwealth's DNA evidence as irrelevant for the same reason.  Id.  In claim ten, Petitioner argues that his trial counsel was ineffective for failing to move to dismiss the jury and proceed with a bench trial after the trial judge agreed not to instruct the jury on second-degree murder and indicated that he believed it was a close-call as to whether the Commonwealth had introduced sufficient evidence to support a first-degree murder instruction.[11]  *See* ECF No. 3, p.7.  According to Petitioner, counsel should have dismissed the jury at that time because he believes the judge would not have found him guilty of anything more

---

[11] Petitioner appears to withdraw this ineffective assistance of counsel claim in his Traverse.  *See* ECF No. 19, p.4 (stating that "petitioner wishes to delete the ineffective claim").  However, it also appears that Respondents interpreted this claim as one of trial court error for denying Petitioner's motion for judgment of acquittal as to first-degree murder, *see* ECF No. 14, p.37, and, in his Traverse, Petitioner appears to piggy back off this interpretation and argue that the trial court did err in that regard, *see* ECF No. 19, p.4.  However, said trial court error claim was never raised in the state courts and is also procedurally defaulted.

than third-degree murder.  Id.  In claim eleven, Petitioner argues that his trial counsel was ineffective for failing to cross-examine the victim's girlfriend about conflicting statements made to police regarding the amount of money the victim carried on him.  See ECF No. 3-1, p.4.  In claim twelve, Petitioner argues that his trial counsel was ineffective for failing to object to improper comments made by the prosecutor during closing arguments regarding Petitioner's character and credibility.[12]  See ECF No. 3-1, p.9.  In claim thirteen, Petitioner argues that the trial court erred by reading the wrong instructions to the jury and that the transcript is not clear what version of instructions the jury received.[13]  See ECF No. 3, p.10.  Finally, in claim fourteen, Petitioner argues a violation of the Ex Post Facto Clause because the Commonwealth introduced prior bad acts against him for crimes of dishonesty that occurred after the crime in 2004 but before the trial in 2012.  See ECF No. 3-1, p.10.

As previously mentioned, none of these claims were raised in the state courts, and Petitioner raises each of them for the first time in these habeas proceedings.  Accordingly, all of them are procedurally defaulted, and Petitioner has failed to demonstrate cause and prejudice or a fundamental miscarriage of justice in order to excuse their default.  Therefore,  none of them are subject to federal habeas review.

---

[12] Respondents submit that Petitioner did raise this claim in his objections to the PCRA court's notice of intent to dismiss his PCRA petition but argue that the claim is procedurally defaulted because Petitioner abandoned it on appeal.  See ECF No. 14, p.68.  The Court did not find where Petitioner raised this claim in his objections, but such a finding is immaterial as the claim is nevertheless procedurally defaulted.  Furthermore, Petitioner appears to withdraw this claim in his Traverse.  See ECF No. 19, p.13 ("Petitioner . . . wishes to delete this claim.")

[13] Petitioner appears to withdraw this claim in his Traverse.  See ECF No. 19, p.5 (stating that "petitioner wishes to delete this claim").

**E.  Claims Not Procedurally Defaulted**

    **1.  AEDPA Standard of Review**

Pursuant to the AEDPA, a federal habeas court may overturn a state court's resolution of the merits of a constitutional issue only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The phrase "clearly established Federal law," as the term is used in section 2254(d)(1) is restricted "to the holdings, as opposed to the dicta of [the United States Supreme Court] decisions as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S. 362, 365 (2000).

The Supreme Court has identified two scenarios where a state court decision will fall into section 2254(d)(1)'s "contrary to" clause.  First, a state court decision will be "contrary to" clearly established federal law when the court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams v. Taylor, 529 U.S. 362, 405 (2000).  It set forth the following example where a state court decision would be "contrary to" Strickland v. Washington, 466 U.S. 668 (1984), the familiar clearly established federal law governing ineffective assistance of counsel claims.

> If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be 'diametrically different,' 'opposite in character or nature,' and 'mutually opposed' to our clearly established precedent because we held in Strickland that the prisoner need only demonstrate a 'reasonable probability that . . . the result of the proceeding would have been different.'

Williams, 529 U.S. at 405-06 (internal citations omitted).  The Supreme Court said that a state court decision will also be "contrary to" clearly established federal law if it "confronts a set of

facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Id. at 406.

The Supreme Court has said that under the "unreasonable application" clause of 28 U.S.C. § 2254(d)(1), a state court decision involves an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407.  Under this standard, "a federal habeas court may not grant relief simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  The Supreme Court later expanded on this interpretation of the "unreasonable application" clause explaining that the state court's decision must be "objectively unreasonable," not merely wrong; even "clear error" will not suffice. Locklyer v. Andrade, 538 U.S. 63, 75 (2003).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

If a petitioner is able to satisfy the requirements of § 2254(d)(1), then the state court decision is not entitled to deference under AEDPA and the federal habeas court proceeds to a *de novo* evaluation of the constitutional claim on the merits.  *See* Tucker v. Superintendent Graterford SCI, 677 F. App'x 768, 776 (3d Cir. 2017) (citing Panetti v. Quarterman, 551 U.S. 930, 953 (2007) ("When . . . the requirement set forth in § 2254(d)(1) is satisfied[,] [a] federal

court must then resolve the claim without the deference AEDPA otherwise requires."). Indeed, the Third Circuit recently explained that,

> [w]hile a determination that a state court's analysis is contrary to or an unreasonable application of clearly established federal law is necessary to grant habeas relief, it is not alone sufficient. That is because, despite applying an improper analysis, the state court still may have reached the correct result, and a federal court can only grant the Great Writ if it is "firmly convinced that a federal constitutional right has been violated," Williams, 529 U.S. at 389, 120 S.Ct. 1495. *See also* Horn v. Banks, 536 U.S. 266, 272, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002) ("[w]hile it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review . . . none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard"). Thus, when a federal court reviewing a habeas petition concludes that the state court analyzed the petitioner's claim in a manner that contravenes clearly established federal law, it then must proceed to review the merits of the claim *de novo* to evaluate if a constitutional violation occurred. *See* Lafler v. Cooper, 566 U.S. 156, 174, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012).

Vickers v. Superintendent Graterford SCI, 858 F.3d 841, 848-89 (3d Cir. 2017) (internal footnote omitted).

The AEDPA further provides for relief if an adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Under § 2254(d)(2), a state court decision is based on an "unreasonable determination of the facts" if the state court's factual findings are "objectively unreasonable in light of the evidence presented in the state-court proceeding," which requires review of whether there was sufficient evidence to support the state court's factual findings. *See* Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Within this overarching standard, a petitioner may attack specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision. Here, § 2254(e)(1) comes into play, instructing that the state court's determination must be afforded a presumption of correctness that

the petitioner can rebut only by clear and convincing evidence.  Lambert v. Blackwell, 387 F.3d

210, 235 (3d Cir. 2004).

   **2.   Claim 15:  PCRA Court Error**

   In claim fifteen, Petitioner argues a violation of due process because he was not permitted

to supplement or amend his PCRA petition.  *See* ECF No. 6-1, p.31.  While it appears that

Petitioner did raise this argument in a two part claim on appeal to the Superior Court following

the denial of PCRA relief, the Superior Court did not review that portion of the claim but instead

reviewed only the portion of the claim involving PCRA court error for failing to enter a separate

order specifically ruling on Petitioner's response to the PCRA court's notice of intent to dismiss.

*See* ECF No. 14-2, pp.161, 163-64.  Nevertheless, federal courts, including the Third Circuit,

have held that a claim concerning state post-conviction proceedings is simply not cognizable as a

claim in federal habeas proceedings filed by a state convict.  *See* Lambert v. Blackwell, 387 F.3d

210, 247 (3d Cir. 2004) ("habeas proceedings are not the appropriate forum for [petitioners] to

pursue claims of error at the PCRA proceeding"); Hassine v. Zimmerman, 160 F.3d 941, 954 (3d

Cir. 1998) ("[T]he federal role in reviewing an application for habeas corpus is limited to

evaluating what occurred in the state or federal proceedings that actually led to the petitioner's

conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas

calculation . . . .  Federal habeas power is 'limited . . . to a determination of whether there has

been an improper detention by virtue of the state court judgment.'") (internal citations omitted).

*See also* Word v. Lord, 648 F.3d 129, 132 (2d Cir. 2011) (holding that "alleged errors in a

postconviction proceeding are not grounds for § 2254 review because federal law does not

require states to provide a post-conviction mechanism for seeking relief."); Lawrence v. Branker,

517 F.3d 700, 717 (4th Cir. 2008) ("[E]ven where there is some error in state post-conviction

proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error

relating to those post-conviction proceedings represents an attack on a proceeding collateral to

detention and not to detention itself") (citing Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir.

1988)); Bell-Bey v. Roper, 499 F.3d 752, 756 (8th Cir. 2007) ("Because the Constitution does

not guarantee the existence of state post-conviction proceedings, an infirmity in a state post-

conviction proceeding does not raise a constitutional issue cognizable in a federal habeas

application.") (internal citations, quotation, and alteration omitted); Roe v. Baker, 316 F.3d 557,

571 (6th Cir. 2002) ("relief may not be granted to a habeas petitioner for alleged deficiencies in a

state's post-conviction procedure because such claims relate to a state civil matter, not the

custody of a defendant") (citing Kirby v. Dutton, 794 F.2d 245, 247 (6th Cir. 1986)); Sellers v.

Ward, 135 F.3d 1333, 1339 (10th Cir. 1998) ("because the constitutional error [petitioner] raises

focuses solely on the State's post-conviction remedy and not the judgment which provides the

basis for his incarceration, it states no cognizable federal habeas claim") (citing Hopkinson v.

Shillinger, 866 F.2d 1185, 1219-20 (10th Cir. 1989)); Hallmark v. Johnson, 118 F.3d 1073, 1080

(5th Cir. 1997) ("infirmities in state habeas proceedings do not constitute grounds for relief in

federal court"); Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state

habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it

is an attack on a proceeding collateral to the detention and not the detention itself.") (internal

quotation omitted); Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir. 1994); Franzen v. Brinkman, 877

F.2d 26, 26 (9th Cir. 1989); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987).  *But cf.*

Montgomery v. Meloy, 90 F.3d 1200, 1206 (7th Cir 1996) (noting that errors in state collateral

review are not viable claims for federal habeas corpus relief "[u]nless state collateral review

violates some independent constitutional right, such as the Equal Protection Clause"); Dickerson

v. Walsh, 750 F.2d 150, 153 (1st Cir. 1984) (adjudicating capital defendant's Equal Protection claim because "[t]he fact that a petitioner's underlying claim can only be addressed in state court does not give a state the license to administer its laws in an unconstitutional fashion.").  Because Petitioner's due process claim relates only to the PCRA court's alleged error in adjudicating his PCRA petition, *i.e.*, its failure to allow him the opportunity to amend or supplement it, it is not cognizable on federal habeas review.

### 3.   **Claim 16:  Ineffective Assistance of Counsel**

In claim sixteen, Petitioner argues that his trial counsel was ineffective for failing to cross-examine Crystal McHirella, the victim's girlfriend, about the victim's violent behavior towards her, which he maintains would have supported his claim that he killed the victim in self-defense.  *See* ECF No. 3-1, pp.3-4.  In his PCRA petition, Petitioner claimed that the victim had previously committed acts of indecent assault, assault and unlawful restraint against McHirella, and that trial counsel should have cross-examined her about those events to bolster Petitioner's theory that the victim was the initial aggressor in the case.  On appeal from the denial of PCRA relief, the Superior Court noted that in order to succeed on a claim of ineffective assistance of counsel, Petitioner had to demonstrate (1) that his underlying claim was of arguable merit, (2) that counsel's performance lacked a reasonable basis, and (3) that the ineffectiveness of counsel prejudiced him.  *See* ECF No. 14-2, p.165 (citing Commonwealth v. Fulton, 830 A.2d 567, 572 (Pa. 2003)).  However, the court noted that Petitioner "did not present any evidence of the victim's alleged violent acts toward McHirella to the PCRA court" and also noted that Petitioner actually conceded that he could not provide proof that the victim assaulted McHirella but stated that the information would be "easy for the courts to obtain."  Id.  The Superior Court stated that it was not their role to develop and advance claims on Petitioner's behalf but also found that

Petitioner had failed to establish that his claim was of arguable merit because Petitioner had

failed to establish that the allegations of sexual violence would have been admissible at trial or

the existence of any relevant, admissible evidence of the victim's violent behavior.  Id., pp.165-

66.  As explained by the Superior Court:

> "[T]estimony as to the victim's character is admissible for the following
> purposes:  (1) to corroborate the defendant's alleged knowledge of the victim's
> violent character to corroborate the defendant's testimony that he had a
> reasonable belief his life was in danger[;] and (2) to prove the allegedly violent
> propensities of the victim to show he was the aggressor."  Commonwealth v.
> Smith, 416 A.2d 986, 988 (Pa. 1980).  Generally, character evidence is only
> admissible in the form of reputation testimony.  Id.
>
> There are two exceptions that apply in self-defense claims and permit
> defendants to introduce prior acts of the victim.  First, prior violent act of the
> victim are admissible at trial to show the defendant's state of mind, whether or not
> the victim was convicted of these acts, where the defendant can show that he was
> aware of these acts at the time of the offense.  Id.  Second, prior violent acts of the
> victim may be introduced as propensity evidence, but only where those prior
> violent acts resulted in a conviction.  Id.
>
> In the instant case, [Petitioner] has failed to establish the existence of any
> relevant, admissible evidence of the victim's violent behavior.  He does not aver
> that witnesses were available who could have testified to the victim's reputation
> for violence.  Nor does he aver that, at the time of the victim's murder, he was
> aware of the alleged sexual violence towards McHirella, a requirement to
> admissibility under the first exception discussed in Smith, supra.  Finally,
> [Petitioner] does not aver that the victim's violent acts against McHirella resulted
> in a conviction as required under the second exception discussed in Smith.
>
> Having concluded that [Petitioner] failed to establish the existence of these
> alleged violent acts, or their admissibility at trial, we conclude that [Petitioner] is
> not entitled to relief on this claim.

(ECF No. 14-2, pp.166-67.)

To begin, Petitioner's claim is one of ineffective assistance, which is governed by the

familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Under

Strickland, a petitioner must demonstrate that: (1) counsel's representation fell below an

objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different.  Id. at 687.  For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  Id. at 688.  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  With respect to the sequence of the two prongs, the Strickland Court held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. at 697.  For AEDPA purposes, the Strickland test qualifies as "clearly established Federal law, as determined by the Supreme Court."  Williams v. Taylor, 529 U.S. 362, 391 (2000).

As noted in the Standard of Review section, in order to obtain relief Petitioner must first show that the Superior Court's adjudication of this claim was "contrary to" or involved an "unreasonable application of" Strickland.  See 28 U.S.C. § 2254(d)(1).  He can also show that its adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d)(2).

Here, the Superior Court analyzed Petitioner's claims under the test for ineffective assistance of counsel claims set forth by the Pennsylvania Supreme Court in Commonwealth v. Fulton, 830 A.2d 567 (Pa. 2003), and it determined that counsel was not ineffective because Petitioner could not demonstrate that his claim was of arguable merit.  See, supra.  Fulton provides that counsel is presumed to have provided effective representation unless the petitioner

24

pleads and proves that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." Id. at 572 (citing Commonwealth v. Pierce, 786 A.2d 203, 213 (2001) and Commonwealth v. Kimball, 724 A.2d 326, 333 (1999)). The Third Circuit has held that this standard is not "contrary to" Strickland, the standard enunciated by the United States Supreme Court in judging ineffectiveness claims. See Wertz v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000). Thus, given that the state court applied a standard that does not contradict Strickland, and the Court is unaware of a case with materially indistinguishable facts where the Supreme Court arrived at the opposite result, the Superior Court's adjudication of this claim satisfies review under the "contrary to" clause of § 2254(d)(1), and the inquiry now becomes whether its decision was an objectively unreasonable application of that law.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult because the standards created by Strickland and § 2254(d) are both "highly deferential," 466 U.S. at 689; Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). Indeed, the Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 123 ("And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."). Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable, but rather whether there is

any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.  <u>Harrington v.</u> <u>Richter</u>, 562 U.S. 86, 105 (2011).

Under the doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard, Petitioner's claim of ineffective assistance of trial counsel does not merit habeas relief.  Simply put, the Superior Court's finding that Petitioner did not establish his claim had arguable merit was reasonable since Petitioner had failed to present any evidence in his PCRA petition of the victim's alleged violent acts toward McHirella.  In his Traverse to the Respondents' Answer, Petitioner maintains that the Superior Court was incorrect because the victim was convicted of indecent assault and unlawful restraint in 1997 and convicted of simple assault in 2002 and 2004.  *See* ECF No. 19, p.10.  The Court notes that the victim's prior criminal convictions were actually stipulated to at trial and brought to the jury's attention, s*ee* TT, p.250; however, Petitioner appears to argue that this was insufficient and that his trial counsel should have cross-examined McHirella about these crimes because she was the victim of them.  First, Petitioner offers no evidence that McHirella was the victim of the crimes that were stipulated to at trial.  Second, as properly noted by the Superior Court, under the rules of evidence and corresponding state law, testimony of the victim's character could only have been admitted via reputation testimony and Petitioner had failed to show any witness who was available who would have testified to the victim's reputation for violence.  Third, it also properly noted that to introduce specific prior violent acts of the victim towards McHirella to show Petitioner's state of mind at the time of the murder, Petitioner would have had to have shown either (1) that he was aware *at the time of the murder* of prior violent acts by the victim *against McHirella*, or (2) that the victim's violent acts against McHirella resulted in a conviction, neither of which he demonstrated.  Accordingly, the Superior Court's conclusion that Petitioner had

failed to establish ineffectiveness on the part of his trial counsel was reasonable and its

adjudication of this claim thus satisfies review under the "unreasonable application" clause of §

2254(d)(1).  And, to the extent Petitioner argues in favor of relief under § 2254(d)(2), the

Superior Court's decision was not an unreasonable determination of the facts in light of the

evidence presented.  Petitioner is therefore not entitled to habeas relief on this claim.

### 4.  Claim 17:  Brady Violation

In claim seventeen, Petitioner argues that the Commonwealth violated Brady v.

Maryland, 373 U.S. 83 (1963).  *See* ECF No. 3-1, p.3; ECF No. 6, p.2.  Specifically, in his

PCRA petition, Petitioner argued that the Commonwealth violated Brady "where a DNA sample

was taken from [him] on [October 8, 2004,] yet [he] wasn't arrested [for] the 'alleged' Murder

until . . . 2011."  (ECF No. 14-2, p.167) (quoting Appellant's Brief at 36.)  The Superior Court

noted that to prevail on a claim that the Commonwealth committed a Brady violation, Petitioner

had to prove three elements: "(1) the evidence at issue is favorable to the accused, either because

it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution,

either willfully or inadvertently; and (3) prejudice ensued."  (ECF No. 14-2, p.168) (quoting

Commonwealth v. Weiss, 81 A.3d 767, 783 (Pa. 2013)).  However, the court concluded that

Petitioner's reliance on Brady was misplaced because he did not aver the existence of any

evidence favorable to his case or assert that the prosecution suppressed any evidence.  Id.,

pp.167-68.  Instead, Petitioner complained about the delay between an alleged DNA collection in

2004 and his arrest in 2011, but even that was a misstatement of the facts.  Specifically, the court

explained that

> [a]lthough unknown DNA samples were recovered from the crime scene in 2004,
> investigators had no DNA to which to compare the samples.  Contrary to his
> assertions, investigators did not obtain a DNA sample from [Petitioner] until

2010.  It was then that testing revealed that the samples obtained from [Petitioner] matched the unknown samples recovered in 2004.  Once investigators obtained conclusive DNA evidence matching [Petitioner] to the crime, the only delay in prosecution was caused by [Petitioner]'s own efforts to abscond from justice.

(ECF No. 14-2, p.168.)

The Superior Court's adjudication of this claim clearly satisfies review under both 28 U.S.C. §§ 2254(d)(1) and (d)(2), and Petitioner concedes as much in his Traverse to the Commonwealth's Answer.  *See* ECF No. 19, p.11.  Specifically, Petitioner agrees that his claim was based on a misunderstanding of <u>Brady</u>, but he argues that his PCRA counsel was ineffective by presenting the claim in his Turner/Finley letter as a <u>Brady</u> violation when he should have presented it as a "basic due process violation because the passage of time gave the Commonwealth an unfair advantage."  <u>Id</u>.  Once again, Petitioner's claim is based on a misunderstanding of the facts.  Petitioner appears to be under the impression that the Commonwealth knew that he was the perpetrator of the crime in 2004 but chose not to prosecute him until 2011 in order to obtain an advantage at trial.  This is simply not the case.  As explained by PCRA counsel in his Turner/Finley letter,

> [t]he instant homicide occurred on 9/1/04.  On 10/8/04, Defendant was questioned by police after he was chased and discovered hiding in the basement of a residence at 49 Calhoun Street in Pittsburgh; he had cut his hand during the chase, and blood was found on a chain link fence and in the basement and stairwell, and the police took samples of blood from the basement floor and stairwell wall.  10/8/04 Police Report of Detective T. Wolfson.  However, no DNA swabs or samples were taken from Defendant.
>
> Once Defendant became a suspect at the end of 2010, a search warrant was obtained on 12/27/10 to obtain DNA evidence from Defendant.  N.T., 10/29/12 – 11/1/12 (Jury Trial, or "TT"), at 161.  The warrant was served the same day upon Defendant, and Defendant permitted a DNA swab to be obtained by police.  TT at 161-62.
>
> The DNA test results were provided to police on 3/10/11 and charges were filed and an arrest warrant was issued for Defendant on 3/10/11, but he made

himself unavailable from March 2011 until August 2011 (when he was arrested) since Defendant was aware that the police were searching for him (TT at 244-46).

Hence, no DNA sample was taken from Defendant in 2004, and he did not become a suspect in the instant case until late 2010, when a DNA sample was taken, and he was promptly charged with homicide on 3/10/11, when the DNA test results were provided to police. Hence, there were no violations or improprieties committed by the Commonwealth and this claim is without merit.

(ECF No. 14-2, pp.12-13.)

Even if Petitioner's claim was interpreted to be an alleged violation of his due process right to a fair trial due to pre-indictment delay, and the Court were to review the claim *de novo*, such a claim would not merit habeas relief. The Third Circuit has said that a petitioner "can make out a claim under the Due Process Clause only if he can show both (1) that the delay between the crime and the . . . indictment actually prejudiced his defense; and (2) that the government deliberately delayed bringing the indictment in order to obtain an improper tactical advantage or to harass him." United States v. Beckett, 208 F.3d 140, 150-51 (3d Cir. 2000) (citing United States v. Marion, 404 U.S. 307, 325 (1971) and United States v. Lovasco, 431 U.S. 783, 789-90 (1977)). However, not "every delay-caused detriment to a defendant's case should abort a criminal prosecution," Marion, 404 U.S. at 324-25, and "the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment," Lovasco, 431 U.S. at 790. Rather, "the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused," such that no deviation from "fundamental conceptions of justice" is evidenced when a prosecutor "refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt." Id. at 790, 795. "Investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain

tactical advantage over the accused,'" and does not deprive a defendant of due process even if he is "somewhat prejudiced by the lapse of time." Id. at 795-96 (quoting Marion, 404 U.S. at 324).

Here, Petitioner has shown neither that his defense was prejudiced by the delay between the crime and the day he was charged for it, nor that the delay was deliberately caused in order to gain a tactical advantage over him, despite his conclusory statement to the contrary. More importantly, however, the delay at issue here appears to be solely attributable to the investigation rather than prosecution since Petitioner did not become a suspect until late 2010 and he was promptly charged with homicide the day the DNA results were provided to police in 2011. As recognized by the Supreme Court, this type of delay does not deprive a defendant of due process. Accordingly, Petitioner has shown no due process violation as a result of the delay.

## F.    Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. As provided for in 28 U.S.C. § 2253, "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the

district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484. Upon consideration

of these standards, the undersigned finds that there is no basis on which to issue a certificate of

appealability. A separate Order will issue.

        Dated: February 4, 2021.

 

Lisa Pupo Lenihan
United States Magistrate Judge

Cc:    Anthony James Morgan
        KU1328
        SCI Greene
        169 Progress Drive
        Waynesburg, PA 15370

        Counsel of Record
        (*via CM/ECF electronic mail*)

31

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY JAMES MORGAN, | ) | |
| | ) | Civil Action No. 18 – 332 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| MICHEAL OVERMYER and THE | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF PENNSYLVANIA, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

**AND NOW**, this 4th day of February, 2021;

**IT IS HEREBY ORDERED** that the Amended Petition for Writ of Habeas Corpus and Supplement thereto, (ECF Nos. 3, 6), are **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is denied.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment in favor of Respondents and mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc:  Anthony James Morgan
    KU1328
    SCI Greene

32

169 Progress Drive
Waynesburg, PA  15370

Counsel of Record
(*via CM/ECF electronic mail*)